IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **IRONSHORE SPECIALTY INSURANCE COMPANY,** § § § § | | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § § | |
| **WESTERN WORLD INSURANCE COMPANY,** | § § | |
| Defendant. | § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Ironshore Specialty Insurance Company ("Ironshore") files this Original Complaint against Defendant Western World Insurance Company ("Western World"), pursuant to 28 U.S.C. §§ 1332 and 2201, and would respectfully show the Court as follows:

### I.
### PARTIES

1. Ironshore is an insurance company incorporated in the State of Arizona, with its principal place of business in Boston, Massachusetts. Ironshore was and is duly qualified to do and transact business in the State of Texas, and executes and delivers insurance policies in Texas.

2. Western World is an insurance company incorporated in the State of New Hampshire with its principal place of business in Parsippany, New Jersey. Western World was and is duly qualified to do and transact business in the State of Texas as a surplus lines insurer, and executes and delivers insurance policies in Texas. Service may be had on Western World at its address, 300 Kimball Drive, Suite 500, Parsippany, New Jersey 07054, through the Texas Commissioner of Insurance, Chief Clerk Office, 333 Guadalupe, MC 113-2A, P.O. Box 149104,

Austin, Texas 78714-9104. Ironshore requests that citation be issued and served upon Western World.

## II.
## JURISDICTION AND VENUE

3. This insurance coverage action arises out of disputes regarding the defense and indemnity of Asset Campus Housing, Inc. ("ACH") of Houston, Texas, in connection with a suit styled Case No. 1:15-cv-142; *Brittany Meyer, et al. v. APCAR College Park, LLC and Asset Campus Housing, Inc.*; In the United States District Court for the Northern District of Iowa, Cedar Rapids Division (the "Underlying Suit"). ACH is a common insured of Ironshore and Western World. Ironshore asks the Court to declare the rights and duties of the parties under their respective policies of insurance regarding coverage for ACH in the Underlying Suit. Ironshore also seeks to recover one-half of the monies Ironshore paid for the defense and settlement of the claims against ACH, which total $1 million, under theories of breach of contract and contribution. This suit is, therefore, within the Court's diversity jurisdiction under 28 U.S.C. § 1332, because it is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4. Venue is appropriate in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(d). Western World has sufficient contacts to subject it to the Court's personal jurisdiction by issuing insurance policies to individuals or businesses in this district.

5. All persons having an interest in the outcome of this litigation have been joined as parties. The interest of Ironshore is adverse to the interest of Western World. An actual controversy of a justiciable nature exists between Ironshore and Western World regarding the rights and responsibilities of Western World and Ironshore under the policies at issue in

connection with the Underlying Suit. Neither Ironshore nor Western World has sought to adjudicate their respective rights involving these insurance policies by any other legal action.

## III.
## BACKGROUND

6. In the Underlying Suit, tenants of an apartment complex (the "Tenants") in Cedar Rapids, Iowa, called "The Reserve," filed a class-action lawsuit against APCAR College Park, LLC ("APCAR") and ACH in November 2015. APCAR owns the apartment complex, which ACH manages. The Tenants alleged that APCAR and ACH unlawfully entered their apartments without proper notice and unreasonably harassed them. They also alleged that APCAR and ACH made renovations that forced the Tenants to vacate their units. The Tenants' specific causes of action were abuse of access, constructive eviction, and illegal lease terms, all in violation of Iowa's Uniform Residential Landlord Tenant Act, Iowa Property Code Chapter 562A. A true and correct copy of the Tenants' Petition in the Underlying Suit is attached hereto as Exhibit "A."

7. Shortly after the Underlying Suit was removed to federal court in December 2015, ACH tendered its defense to Ironshore. Ironshore issued Miscellaneous Professional Liability Insurance Policy 002380100 to ACH for the policy period May 1, 2015, through May 1, 2016 (the "Ironshore Policy"). The Ironshore Policy has liability limits of $1 million, which includes defense costs.

8. While defending ACH, Ironshore learned that ACH was also covered under commercial general liability policies issued by Western World. Western World issued Commercial Lines Policy No. BRP0001993 for the policy period May 1, 2014, to May 1, 2015, and Commercial Lines Policy No. BRP0002310 for the policy period May 1, 2015, to May 1, 2016 (the "Western World Policies"). ACH is an additional insured under the Western World

Policies. The Western World Policies each have liability limits of $1 million. The defense of ACH was tendered to Western World on or about October 11, 2016.

9. The Underlying Suit was mediated on December 1, 2016. Western World was advised of the mediation but did not participate. The Underlying Suit was settled at the mediation, with Ironshore contributing its remaining policy limits.

10. In correspondence dated December 20, 2016, Western World advised APCAR and ACH that Western World would participate in APCAR's defense, subject to a reservation of rights. Although Western World acknowledged that ACH was an additional named insured under the Western World Policies, it denied a defense obligation to ACH, asserting that its coverage was excess to that of the Ironshore Policy because ACH was managing the property and, therefore, subject to the provisions of an endorsement on its Policies, entitled "Real Estate Property Managed – Contingent," discussed *infra*.

11. On May 22, 2017, the federal district court approved the class action settlement and entered its final judgment. A true and correct copy of the Order and Judgment is attached hereto as Exhibit "B." Western World refused to contribute to the settlement or indemnify ACH for any portion of the judgment.

12. Per the terms of the Ironshore Policy and general equitable principles, Ironshore is subrogated to the rights of ACH, including its cause of action for breach of contract, against Western World for the monies Ironshore paid to defend and settle the Underlying Suit. Because Ironshore and Western World are co-primary insurers of ACH, Ironshore also has an independent cause of action for contribution against Western World for its share of ACH's defense and the settlement amount.

## IV.
## GROUNDS FOR DECLARATORY JUDGMENT AND CAUSES OF ACTION

**A.     The Western World Policies afforded co-primary coverage to ACH.**

13.     ACH managed APCAR's property pursuant to an Asset Management Agreement ("AMA") dated May 23, 2014. The AMA obligated APCAR to obtain general liability coverage and also required ACH to indemnify APCAR for claims arising out of any act or omission of ACH "constituting negligence, bad faith or willful misconduct" by ACH or any of its employees or agents in connection with its performance under the AMA.

14.     APCAR and ACH are both named insureds on the Western World Policies. The Western World Policies contain an endorsement entitled "Real Estate Property Managed – Contingent," which Western World contends limits its obligations to ACH. That term is defined, in pertinent part, as:

> [P]roperty of others you operate or manage or as to which you act as agent for the collection of rents or in any other supervisory capacity, and for which there is a written contract with the property owner indicating the owner is responsible for purchasing and maintaining general liability insurance on the property.

15.     The endorsement further provides:

> With respect to your liability arising out of "real estate property managed – contingent" for which you are acting as real estate manager, this insurance is excess over any other valid and collectible insurance available to you, whether such insurance is primary or excess.

16.     The Ironshore Policy contains the following "other insurance" provision:

> The insurance afforded by this Policy is in excess over any other valid and collectible insurance available to the **Insured**, except insurance specifically arranged by the Named Insured to apply in excess of this insurance.

17. Because the "other insurance" clauses of the Ironshore Policy and the Western World Policies conflict and are mutually repugnant, the policies provide co-primary coverage. *See Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583 (Tex. 1969).

**B.   Western World had a duty to defend ACH under the Western World Policies.**

18. Coverage B of the Western World Policies provides liability coverage for "personal and advertising injury" arising out of the insured's business committed in the coverage territory during the Policy period. "Personal and advertising injury" is defined as an injury from various offenses, including "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." The Tenants pleaded personal injuries, including constructive eviction, abuse of access, and invasion of their right of privacy. Under Texas's eight-corner rule, the Tenants' allegations triggered Western World's duty to defend. *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006) ("When an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from [the] terms of the policy and the pleadings of the third-party claimant.").

**C.   Western World has a duty to indemnify ACH.**

19. While the eight-corners doctrine determines the duty to defend, "the facts actually established in the underlying suit control the duty to indemnify." *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009). The duty to indemnify "arises after an insured has been adjudicated, *whether by judgment or settlement*, to be legally responsible for damages in a lawsuit." *Home Depot, U.S.A., Inc. v. Federal Ins. Co.*, 241 F. Supp. 2d 702, 709 (E.D. Tex. 2003) (quoting *Reser v. State Farm Fire & Cas. Co.*, 981 S.W.2d 260, 263 (Tex. App.—San Antonio 1998, no pet.)) (emphasis added). Western World declined to participate in

the mediation of the Underlying Suit, and Ironshore entered into a reasonable settlement of the Tenants' claims to protect ACH's interests. Based on the final judgment and orders approving the class action settlement, Western World had a duty to indemnify ACH and contribute to the settlement.

**D.     Ironshore is entitled to a declaration that Western World's coverage is co-primary.**

20.     Based on the foregoing, Ironshore requests that the Court declare, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, that Ironshore and Western World provided co-primary coverage to their mutual insured, ACH, and that Western World had a corresponding duty to defend and indemnify ACH in the Underlying Suit.

**E.     Ironshore is subrogated to ACH's cause of action for breach of contract against Western World.**

21.     The Western World Policies are valid and enforceable contracts, and ACH and Ironshore satisfied all conditions precedent to Western World's participation in ACH's defense and settlement of the Underlying Suit. Western World's refusal to contribute to ACH's defense and settlement of the Underlying Suit constitutes a breach of contract that caused Ironshore to incur substantial damages in the amount of approximately $500,000.00 in order to protect the interests of ACH, the common insured of Ironshore and Western World.

**F.     Attorney's Fees.**

22.     Due to the actions of Western World, Ironshore has been required to retain the services of the undersigned law firm. Ironshore has agreed to pay its attorneys a reasonable fee for their services necessarily rendered and to be rendered in this action. Pursuant to Section 38.001 of the Texas Civil Practices & Remedies Code, Ironshore is entitled to an award of reasonable attorney's fees against Western World in an amount to be established at trial.

### G. Contribution.

23. In the alternative to its subrogation claim through ACH, Ironshore asserts a cause of action against Western World for its share in contribution toward the cost of ACH's defense as an insured under the Western World Policies and the amount paid to settle the Underlying Suit against ACH.

## V.
## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Ironshore prays that Western World Insurance be cited to appear and answer herein, and that, on final hearing, Ironshore have judgment as follows:

1. A declaration that, pursuant to the Western World Policies, Western World had a duty to defend and indemnify ACH on a co-primary basis with the Ironshore Policy;

2. A declaration that Western World, as a co-primary insurer with Ironshore, is obligated to contribute to one-half of the defense and indemnity costs incurred in the Underlying Suit;

3. Damages in the amount of one-half of the amount that Ironshore paid to settle the Underlying Suit, on behalf of ACH, and one-half of the defense costs incurred by Ironshore in defending ACH against the Underlying Suit;

4. Reasonable and necessary attorneys' fees for Ironshore's pursuit of this action pursuant to Texas Civil Practice and Remedies Code §§ 38.001, *et seq.*; and

5. Such other and further relief to which Ironshore may be entitled, whether at law or in equity.

Respectfully submitted,

**HANNA & PLAUT, L.L.P.**
211 East Seventh Street, Suite 600
Austin, Texas 78701
Telephone: (512) 472-7700
Facsimile:  (512) 472-0205

By: */s/ David L. Plaut*
    David L. Plaut
    State Bar No. 16066030
    Southern District No. 13353
    dplaut@hannaplaut.com

**ATTORNEY- IN-CHARGE FOR PLAINTIFF**

Of Counsel:

Jeffrey C. Glass
State Bar No. 08004000
jglass@hannaplaut.com
Lauren L. Burgess
State Bar No. 24082751
Southern District No. 2110127
lburgess@hannaplaut.com